No. 30,931

In re Accusation of J. R. STANLEY.

(33 P. 2d 163.)

Opinion filed June 9, 1934.

*Roland Boynton,* attorney-general, *Everett E. Steerman,* assistant attorney-general, *Fred Robertson, James V. Humphrey, A. M. Keene, W. F. Lilleston* and *T. M. Lillard,* as State Board of Law Examiners, for the plaintiff.

*J. R. Stanley,* of Kansas City, *pro se.*

The opinion of the court was delivered by

JOHNSTON, C. J.: J. R. Stanley, who had been admitted to practice law, was charged with misconduct and, it being brought to the attention of the state board of law examiners, an investigation was had which led to the filing of an accusation. It was alleged that in March, 1927, he was employed by Henrietta Williams to recover from a benefit fund of the Wilson & Company packing plant, in which her husband was employed at the time of his death. It was alleged that he was to receive a fixed fee of $50 regardless of the amount recovered. A suit was brought by Stanley, and after some negotiation it was agreed that the action might be compromised for $450; that Stanley appeared in court and consented to the giving of judgment for $425, and that this was done without Mrs. Williams' consent. It is alleged that Mrs. Williams was unfamiliar with court proceedings or with lawyers, and that when he collected the $425 he insisted that she should pay him $125 for collecting, and he also charged her for defending her son in an old criminal case in which he charged her more than $125, but he kept most of the money, notwithstanding numerous demands and notwithstanding his admissions before a committee of the Wyandotte bar association.

It was further alleged that prior to the bringing of the suit to obtain the judgment, Mrs. Williams gave Stanley $15 to be used as a deposit for costs, but that he procured her to sign a poverty affidavit, the nature of which she was not aware, and used the money for other purposes.

It was also represented that on May 27, 1932, Stanley offered to surrender his license to practice law, signed an entrance of appearance in lieu of the issuance and service of summons, waived the time in which to plead, and requested the supreme court to enter on its records that he had surrendered his right to practice law and thereby confessed the accusations made and therefore that the accused should be disbarred.

Upon the accusation a trial was ordered, and the court appointed W. S. Jenks as commissioner to take the evidence and make findings. Mrs. Williams testified in behalf of the state that she was a laundress, the common-law wife of Mose Williams, who died on January 5, 1927, while he was in the employ of the Wilson & Company packing plant, which entitled her to the benefit of a fund under which her husband was employed.

Objections to her claim were made and she then employed Stanley to sue the company for the amount due, and it was agreed that his fee for such action would be $50. He first told her that the company would pay, but afterwards said that they had not paid, when, as a matter of fact, a compromise judgment was then entered awarding plaintiff $425. She was in need of the money and kept asking for it, and Stanley paid her small amounts from time to time, amounting to $95, and receipts were generally given for these amounts. He claimed that he had paid her $150 by check. He did not produce the check or any evidence of a bank record or the testimony of a bank officer of such a transaction, and on the evidence it must be held that no such payment was ever made.

It may be remarked, as the commissioner states, that Stanley did not testify at the hearing and, although he made statements not under oath, during the trial by way of argument, and in the examination of others, he was not sworn as a witness and gave no testimony of his claims. There was confirmatory evidence of the testimony of Mrs. Williams. For instance, Mrs. Margaret Wade, who appears to be an intelligent, honest woman of good character, whose standing was not questioned or attacked, testified:

"I live in Kansas City, Mo. Henrietta Williams has worked for me ten years as my laundress. She works for Mrs. Chaney once in a while. I learned after her husband died she had money coming and she couldn't seem to collect it from his insurance. Henrietta seemed to be hard up and I asked why she didn't get her money. I personally took some interest in trying to help her get her money. I told her to go to the clerk of the district court to find out whether it was paid or not. She did. I went over to Mr. Stanley's with

Henrietta to talk to him about her money, and he said he collected it and spent the money. He felt terrible for that. He said if this is reported to the bar association, at sixty-one, he would be through. He said, 'I am an old man and if you want to do something now it is all right. If you will wait I am going to borrow some money on my son's life insurance policy which he has had since he was a little boy. I will have that in a few weeks and I will come out to your house to pay it or bring the check such and such a day.' He didn't come, so I called him. We were to meet him the next day at ten o'clock. We went over two or three times after then. He didn't show up. I called at the office and there was always some excuse, they had to send the check back to be O. K.'d, back to New York; he would have it anyway before the holidays, finally, never did get it. He said he owed $330. He said he wasn't going to charge her $50 on account of the way he had done her.

"Q. What did he say about the $50? A. He was to charge her $50 for collecting it.

"Q. What did he say about renouncing his fee? A. He would do it on account of the way he had treated her; had stolen her money."

Mrs. Wade said she told him that Mrs. Williams should pay him for his services. He paid $20 on that day and he admitted that he owed her $330 after that was paid.

There was also the testimony of Mrs. Chaney, who stated that she had known Henrietta Williams ten or twelve years, that on an occasion in 1929 she went with Mrs. Wade and Mrs. Williams to Stanley's office, took them over in her car, that she didn't go into the office, but when they came out of the office she heard Mr. Stanley say, "I will pay you that money. I will bring it out to your house, Mrs. Wade." This was a confession that he still owed her $330 at that time, but he subsequently charged her one-fourth of the amount for the collection. Nor did he claim at that time any credit for the old case in which he had defended Mrs. Williams' son, and this was an appeal for sympathy for the appropriation of her money because of his age.

Because of the way he had treated her, he told Mrs. Wade he would forgive the $50 fee he had agreed to charge for his service. It may be noted that Mrs. Wade told him that Mrs. Williams should pay the $50 he was to charge for his services, and he said he would not do it on account of the way he had treated her; stolen her money.

When he contested the accusation filed against him, he apparently had revised the account with Mrs. Williams. He appeared to have charged her with $150 for defending her son, and he also claimed that at one time he had sent her by check a payment of $150. He made a further charge of 25 per cent, or one-fourth, of the amount

of the judgment obtained on the insurance. In view of the lack of proof on his claims, his admissions, his delays and deceptions as to the receipt of the fund, the court is of the opinion that these claims are without support in the evidence, and that on his own admission he owes Mrs. Williams at least $330, and not the small sum of $8 or $9 found by the commissioner.

Besides, the fact that the respondent did not become a witness in the case, and did not testify to the contrary of the charges imputed, and proven against him, he has not filed any abstract or brief, but says that he submits the case to this court on the report of the commissioner as far as his interests are concerned.

The commissioner, on the testimony given, finds that Stanley, in his long experience at the bar, has a good reputation for honesty and fair dealing, and that his conduct in the trial of cases in the district court has met with the approval of the judges of that court. The commissioner has found that the claims made by the respondent, but not proven by the respondent, should be allowed to the extent of $381.35, leaving $43.75, and that he has since paid $10 of that amount.

It is also found that the offer of Stanley to surrender his license to practice law in Kansas should not be construed as an admission that he was guilty of the offenses charged, but he recommends that: "For failure to report promptly the collection of $425, and for failure to pay or tender payment of the balance due to Henrietta Williams within a reasonable time, that the respondent, J. R. Stanley, is subject to censure."

The cause is original in this court, and while the court appoints a commissioner in this class of cases to take testimony and make findings, the duty still rests on the court to read the record, the testimony and proceedings, as well as the findings of the commissioner, and then pronounce its own judgment in the case. As stated, the actions of the respondent are inconsistent with the ethical conduct required of lawyers and inconsistent with his oath of office. The proof satisfies us that the conduct of the respondent as described by the witnesses is more serious than that for which a mere censure should be given.

It is our judgment that such conduct deserves disbarment of the respondent. We therefore adjudge that J. R. Stanley is unworthy to continue in the practice of the law, and that he be disbarred and his name stricken from the roll of attorneys.