In re Bar Association.

No. 18,647.

IN THE MATTER OF THE PETITION OF THE COLORADO BAR ASSOCIATION.

(325 P. [2d] 932)

Decided May 13, 1958.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

This matter comes before the court upon the ex parte petition of the Colorado Bar Association which is a non-profit Colorado corporation whose membership con-

sists of a majority of lawyers admitted to practice in Colorado. Among the corporate objectives is the commendable duty "to secure the more efficient administration of justice and to uphold the honor and integrity of the Bar." The petition contains the following:

"COMES NOW the Colorado Bar Association and respectfully petitions the Court for an order dissolving a certain order entered by this Court on January 26, 1956, wherein the Court directed the Grievances and Ethics Committee of your petitioner to stay all proceedings until further order of this Court.

"Your petitioner further requests the Court to enter an order recognizing the right of your petitioner to consider and express opinions on questions of ethics submitted to it."

We first consider the request relating to the order of this court entered January 26, 1956, which order reads as follows:

"Information having been received from the chairman of the grievance committee of the Denver Bar Association relating to current investigation being conducted by the Denver and Colorado Bar Associations relating to alleged violations of the Canons of Professional Ethics and the Canons of Judicial Ethics.

"It is this day ordered by the Court (Mr. Justice Holland not participating) that in so far as said investigations relate to enforcement of all of said Canons as Rules of this Court, all further actions and further investigations are hereby ordered stayed and discontinued pending determination of the hearings to be conducted by this Court beginning January 30, 1956, dealing with the Canons of Professional Ethics and the Canons of Judicial Ethics, or until the further order of the Court."

In considering the question as to whether the above quoted order now operates to prevent the proper functioning of the committee on grievances of the Colorado Bar Association, it is necessary to record certain facts

well known to this court, to the petitioners, and to members of the Bar generally.

Canons of Ethics have been promulgated for many years by the Bar Associations of the various states, and by the American Bar Association. Rule 83E of the Colorado Supreme Court Rules existing prior to the adoption of the Rules of Civil Procedure (Vol. I, Code of Civil Procedure, page 652) states: "The Court recommends the Canons of Ethics set out in the appendix to these rules as a standard of professional conduct." When the Rules of Civil Procedure were adopted by the court in 1941, there was contained therein Rule 228 which reads as follows: "The court adopts the Canons of Ethics published herein as a standard of professional conduct." Volume 1, C.S.A. page 417, Appendix C, contains the canons of ethics referred to. After the adoption of the Rules of Civil Procedure, revised Canons of Professional Ethics, together with new Canons of Judicial Ethics, were promulgated by the American Bar Association, and upon recommendation of the Colorado Bar Association these two sets of canons were "adopted" by this court July 30, 1953. The Canons of Professional Ethics will be found in C.R.S. 1953, Vol. 1, beginning at page 140. They relate to the conduct of the practicing lawyer. The Canons of Judicial Ethics are to be found beginning at page 149 of the same volume. They relate to conduct of the judiciary.

Long prior to the date of the order referred to in the petition herein, this court had spoken upon the question of whether a breach of ethical standards could be made the basis of disciplinary action or revocation of a professional license. *Chenoweth v. State Board,* 57 Colo. 74, 141 Pac. 132; *State Board of Dental Examiners, et al. v. Savelle,* 90 Colo. 177, 8 P. (2d) 693; *Sapero v. State Board of Medical Examiners,* 90 Colo. 568, 11 P. (2d) 555; *Lipset v. Davis, et al.,* 119 Colo. 335, 203 P. (2d) 730.

From these authorities extending over a period of forty years, it is quite clear that at the time of the

order entered by this court January 26, 1956, it was set-
tled law in this jurisdiction that a professional license
could not be revoked nor disciplinary action taken
merely for a violation of standards of ethics. To be
actionable in disciplinary proceedings the conduct com-
plained of must amount to a violation of law or it must
involve "moral turpitude or dishonorable conduct."
Every functioning committee of the bar association is
charged with knowledge of these long established prece-
dents.

 █ We now turn our attention to the procedures
then, and now, in force which must be followed in ac-
tions for the discipline of lawyers. These procedures
are defined in Chapter 20, R.C.P. Colo. (Rules 241 to
250). By these rules the committee on grievances of the
Colorado Bar Association is made the agent of this court
to investigate alleged grievances, to conduct hearings,
and to report its findings and conclusions to this court.
These rules require that the pendency of investigations
be strictly confidential. Rule 248 provides: "The files
and transactions of the committee shall not be public
records unless released by vote of the committee with
the approval of the court."

The petition on file herein contains the following state-
ment, admittedly true:

"Immediately prior to January 27, 1956, there were
articles in the press indicating that the Colorado Bar
Association Grievance Committee would conduct inves-
tigations concerning the propriety of the use of the
names and photographs of a member of the Supreme
Court of Colorado and two members of the Bar in con-
nection with the formation of the American Founders
Life Insurance Company."

█ The grievance committee functioning in the
capacity of an agent and representative of this court, or
persons identified with it, in violation of the applicable
rule, released the information that it intended to investi-
gate certain persons in connection with particular con-

duct which the committee must have thought to be in violation of law, or tainted with "moral turpitude or dishonorable conduct." The committee of the bar association cannot escape responsibility for the advance press publication of its intentions. The rule prohibited public release of transactions of the committee unless by "vote of the committee *with the approval of the court.*" No approval of this court was ever sought in connection with the press releases pertinent to this matter. The first knowledge that this court, or any member thereof, had concerning the intended investigation was the information contained in the public press.

The Colorado Supreme Court on December 12, 1955, had ordered public hearings to be conducted on the question as to whether the canons of ethics "adopted" by the court July 30, 1953, should be amended. Also involved in this hearing was the question of whether by "adopting" said canons the same were to be enforced as law. The hearings had been scheduled to begin January 30, 1956, and public notice thereof had been given.

In view of the illegally publicized intention of the committee to conduct investigations concerning a matter in which it was very doubtful that "moral turpitude or dishonorable conduct" was present, it became important to determine whether the conduct about to be investigated amounted to a violation of law. If, by "adopting" the Canons of Professional and Judicial Ethics they were given the force and effect of law, the publicized investigations might well proceed even though no "moral turpitude or dishonorable conduct" was present. If, however, by "adopting" said canons they were not given the status of law there might be no legal basis for the investigations.

Under these circumstances a determination of this question was essential for the guidance of the committee before investigations began. Accordingly we issued the order of January 26, 1956. No restrictions of any kind were placed upon the grievance committee by

that order in the investigation of any alleged grievance which involved moral turpitude or dishonorable conduct, or which involved an alleged violation of an **existing** law. The committee was directed by said order to forego investigations being considered by it on the premise that by "adoption" of the canons this court gave all of them the force and effect of law, for a breach of which one could be subjected to disciplinary action. The committee was told to withhold further action in such cases "pending determination of the hearings to be conducted by this court beginning January 30, 1956, * * * or until the further order of the court." That hearing was concluded and the opinion of the court was announced on February 27, 1956. In the opinion we made it perfectly clear that by expressing approval of the canons of ethics the court did not enact them into law. We said:

"Rules for conduct suggested in those canons which do not recognize the distinction between that which is inherently wrong and inherently right, or that which is basically immoral and basically moral, or that which is fundamentally dishonest and fundamentally honest, cannot subject any person to disciplinary action because of the existence of the canon unless he was subject to such discipline in the absence of the canon. Although the canons employing language of wide coverage cannot be given the effect of law, they nevertheless are recognized generally as a system of principles of exemplary conduct and good character." *In Re Canons,* 132 Colo. 591. According to this language the order of January 26, 1956, by its express terms, became functus officio. By the opinion from which we quoted above the grievance committee was told that unless conduct of a lawyer violated a law other than the canons, or involved an element of inherent wrong, immorality or dishonesty, no disciplinary action would be justified. The committee apparently had little difficulty in understanding the opinion because the petition now before us states that

thereafter it "resumed its grievance functions within the limitations of said opinion."

Moreover, in March 1956, the then Chief Justice, by direction of the court, informed the proper Bar Association officers to proceed as formerly, "* * * to investigate any charges against any member of the bar * * * for unprofessional conduct amounting to immorality, dishonesty or acts which are inherently wrong." This was only a repetition of the law as it had been established in this state for forty years.

Under all these circumstances we are at a loss to understand the delay of two years in filing the petition herein if for any reason the opinion of this court was not clear. If the conduct of the lawyers who (according to the press over two years ago and according to the petition now before us) were to be investigated is such as the committee believes to be subject to disciplinary action under the law, why have they delayed for two years in the matter? In language as clear as can be written this court authorized the committee to proceed if a case for discipline could be made under the law. The order of January 26, 1956, had no effect whatever after February 27, 1956. The opinion of the court could have no other effect. The letters of the Chief Justice made it plain. Nothing happened! This court concluded that in the judgment of the committee the "use of the names and photographs" of attorneys "in connection with the formation of the American Founders Life Insurance Company" was not conduct involving "moral turpitude or dishonorable conduct." If the committee now desires to proceed as originally planned it is free to do so and in that connection there are other newspaper advertisements in the possession of the court containing large display ads giving the names and photographs of other prominent lawyers and describing their connections with business enterprises which should be investigated with equal vigor, free however of any advance publicity.

The second phase of the petition herein requests this court to "enter an order recognizing the right of the bar association, * * * to consider and express opinions on questions of ethics submitted to it." From the statements contained in the petition it is quite clear that petitioners have overlooked a most significant fact. The only committee of the bar association with which we are here concerned is that which is authorized by chapter 20, R.C.P. Colo. to function as the agent of this court in investigating grievances which might subject an attorney to discipline. Any action of that committee taken under authority of said chapter 20, as the representative of this court, must be carried on in compliance with the rules laid down. The committee, functioning in disciplinary proceedings under chapter 20, ceases to be a representative of the bar association and becomes a committee of this court, and as such is responsible solely to the court. The bar association, by any action on its part, cannot add power or authority to that which is conferred upon the committee by chapter 20. The Supreme Court of Colorado has no agent or representative authorized by law to express opinions on questions involving standards of conduct. No committee serving in the confidential capacity called for under chapter 20 can conduct hearings as the representative of this court, and thereafter make use of any confidential matters coming to its attention, for any purpose other than that of disciplinary action if such action is warranted. If such action is not warranted it cannot use the data obtained as the basis for the publication of an opinion on ethics in which the identity of the original subject is divulged.

This court has not heretofore, does not now, and should never in the future, make an order which would prevent any lawyer or association of lawyers, or any chamber of commerce, or any organization of labor, or civic, professional or fraternal group, or other persons, or the press, from enjoying to the fullest the fundamental freedoms contained in the Bill of Rights. Article

II, section 10, of the Colorado Constitution provides that: "* * * every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; * * *." Subject to the condition that no person can be critical of a judge if the purpose of the criticism is to influence the result of pending litigation, a citizen can praise or condemn conduct of a court, or a judge, "being responsible for all abuse of that liberty," to the same extent and through the same procedures applicable to all citizens.

■ There is lodged in this court exclusive power to admit applicants to the bar of this state; to prescribe the rules to be followed in the discipline of lawyers; and to revoke a license to practice law, or otherwise assess penalties in disciplinary proceedings where the conduct of the lawyer accused amounts to a violation of law, or involves moral turpitude or dishonorable conduct. In all these matters full responsibility rests with the court. We will neither shirk the duty nor fear the peril involved in such matters, and will adjudge according to the demands of justice as the court sees it, whether the result pleases or displeases any persons who do not have the responsibility of decision.

When the Supreme Court in the discharge of this function calls upon a committee of the bar to conduct investigations in disciplinary proceedings, the members of that committee occupy a position of trust and confidence. They must function under applicable rules. It would be impossible for the court to effectively function in this field without the assistance of the members of the bar. Any such committee, acting for the court, should not be charged with duties as members of another committee of the Bar Association, a private organization, which might require the individual members to disregard the confidential nature of the duties they have assumed as an agent of the court.

No person acting as a representative of this court has any power or authority to express an opinion concerning

the propriety or the ethics of the conduct of any lawyer. In disciplinary proceedings the court acts under well established rules which protect the attorney from possible unjust public criticism until guilt is established under due process of law.

Private organizations are free to speak and publish, under rules of their own making, such opinions as they entertain on any subject. We are confident that associations of lawyers will be the first to hear before they decide, and will be certain of the facts before expressing opinions.

In so far as the conduct of a judge of any court of record in this state is questioned, it is pertinent to say that this court and the grievance committee of the Bar Association are without power or authority to institute or conduct disciplinary proceedings of any kind, even in that extreme case in which a judge might admit a violation of the law or the commission of an act involving moral turpitude and dishonorable conduct. The constitution fixes the remedy at impeachment. Every judge of this court stands on an equal footing with every other judge, and each is responsible solely to the people. Our authority in disciplinary proceedings is limited to lawyers. The grievance committee of the Bar Association, acting as the investigating agent for this court, has no greater power or authority than the court.

From all that has been said above it is apparent that the court acted wisely in adopting the new rule to be effective in 1959, under which the court will name the members of its own independent grievance committee to hear matters in the discipline of lawyers. This new rule was adopted as a matter of court record in full cooperation with the officials of the Bar Association, and was widely publicized by that organization at the time of adoption. Thus there will be no opportunity for inconsistent duties as between responsibility to the court and possible conflicting obligations to the Bar Association.