No. 40,733

In the Matter of the Accusation for Disbarment of JOHN N. STICE and (ROY S. TRAIL).

(339 P. 2d 29)

Opinion filed May 16, 1959.

*John Anderson, Jr.,* Attorney General, argued the cause, and *Robert E. Hoffman,* and *Charles N. Henson, Jr.,* Assistant Attorneys General, *Ora McClellan,* Special Assistant Attorney General, and *Harry Robbins,* Special Assistant Attorney General, were with him on the briefs for the accuser.

*C. H. Morris,* of Wichita, argued the cause and *A. D. Weiskirch,* and *T. H. Hill,* both of Wichita, were with him on the briefs for the accused.

The opinion of the court was delivered by

PARKER, C. J.: This is a disbarment proceeding, commenced by the State Board of Law Examiners on March 19, 1957, by the filing of an accusation, pursuant to the provisions of G. S. 1949, 7-111 *et seq.,* against John N. Stice and Roy S. Trail.

Respondents' answers, denying generally the charges contained in the accusation, were filed in due course. Thereupon this court appointed the Honorable Lester M. Goodell, an experienced and well-qualified attorney as its Commissioner to act in accord with the powers and duties prescribed by the statute in disbarment cases. Thereafter such Commissioner conducted extensive hearings, both in Wichita and Topeka.

Sometime after the commencement of the hearings, but long prior to their conclusion, respondent Roy S. Trail filed with this court a written notice, duly acknowledged, stating that he was voluntarily surrendering his license to practice law before the Courts

of Kansas. Subsequently, and by order dated July 26, 1957, the Court accepted the surrender of the license of this respondent. Thereupon it suspended, revoked and cancelled all of his rights and privileges to practice law in this State and ordered that his name be stricken from the Roll of Kansas Attorneys.

In passing it should be noted that, for all practical purposes, the action last above indicated resulted in a determination of the proceeding against Trail. Therefore, throughout the remainder of this opinion, John N. Stice will be referred to as either the respondent or the accused.

Further hearings were held by the Commissioner for the purpose of taking evidence on issues joined by the accuser and the accused. At one of these the accuser closed its case in chief but before doing so announced it was going to present a motion to this court for leave to file an amended accusation to conform to the proof. Such a motion, setting forth the amendments proposed, was promptly filed with our clerk and a copy mailed to counsel for the respondent. Thereafter, on recommendation of the Commissioner, the motion was allowed and an amended accusation, which for purposes here important may be said to have added two counts to the original accusation, was filed.

The accusation as amended serves a threefold purpose in that it discloses (1) the charges made against the accused in the four counts of the original, (2) the two additional charges (identified as Counts V and VI), relied on as having been made in conformity with the proof, and (3) the over-all basic facts on which the accuser relies as affording grounds for the respondent's disbarment. On that account we believe such accusation should be set forth at length, hence it is appended to and made a part of this opinion.

The hearings for purposes of taking testimony were concluded by the Commissioner on November 5, 1957. Thereafter, and on June 20, 1958, the delay being due to his illness, followed by hospitalization and surgery, the Commissioner made his report wherein, following a painstaking summary of the evidence and a discussion thereof, he made findings of fact and conclusions of law.

The findings of fact are extensive and there is no necessity to here burden our reports by detailing them. In a general way it may be said they are to the effect that all charges made in the six counts of the amended accusation (See the appendix) were established by evidence taken at the hearings except:

1. That the offense charged in count two of such accusation concerning the alleged plan or conspiracy between the accused and Trail, and the other persons therein named, to secure the election of the accused as Judge of the Court of Common Pleas, was not sustained by the evidence.

2. That the offense charged in count four of such accusation pertaining to the receipt by the accused of gifts or stolen merchandise from burglars knowing at the time that such merchandise was stolen, was not sustained by the evidence.

3. That, notwithstanding the evidence established all other charges made in count six of the amended accusation, there was no proper sustaining evidence to support the last charge made in such count, charging in substance that Russell paid the accused $750 of his share of the money received out of the burglary committed at the Pawnee I. G. A. Food Store.

Based on his findings the Commissioner concluded as a matter of law that the accused had violated his oath as an attorney at law; that he had committed acts of gross and wanton misconduct, which conduct in some instances was criminal in nature; and that because of this conduct he had forfeited all rights and privileges pertaining to his license as an attorney at law, hence his license to practice law in Kansas should be revoked and cancelled.

After the filing of the Commissioner's report accused filed a motion for a new trial. This was denied by the Court on the ground the statute makes no provision for the filing of such a motion in disbarment proceedings.

Thereafter the accuser filed a motion for adoption of the findings of fact and recommendations contained in the report of the Commissioner and for an order of disbarment as prayed for in the amended accusation, thus bringing the entire matter before us for consideration and decision. This, under our statute (G. S. 1949, 7-113, 7-114 and 7-115) and our established decisions (*In re Stanley*, 139 Kan. 656, 659, 33 P. 2d 163; *In re Cox*, 164 Kan. 160, 163, 188 P. 2d 652), means that, notwithstanding our appointed Commissioner has taken the testimony and made his report, it is the duty of this Court to examine the entire record and, after doing so, determine for itself the judgment to be rendered.

The accused devotes considerable space in his brief to his theories respecting (1) the nature of disbarment proceedings; (2) statutes (G. S. 1949, 7-111 to 7-117, incl.) and practice applicable to disbar-

ment proceedings; and (3) Rules of the Supreme Court (See 181 Kan. XIV and XV, Rules Nos. 20 to 32, incl.) applicable to disbarment. Except to note our view that a disbarment proceeding is not a criminal proceeding, but is a special proceeding civil in nature, and is governed by the rules applicable to all civil actions (5 Am. Jur., Attorneys at Law, 434, § 287; *In re Burnette*, 73 Kan. 609, 85 Pac. 575), we are not inclined to enter into an academic discussion of these interesting subjects, which are, or should be, well-understood by every member of the Bar of this State. It suffices to say we understand the nature of such a proceeding, are fully cognizant of the applicable statutes and practices, as well as our own rules, and are convinced a decision of this case does not require any such discussion.

Another claim advanced by the accused is to the effect the special proceedings violated the spirit and letter of the law to his prejudice and detriment because of *abuse of discretion and misconduct of the Commissioner*. His brief on this subject is replete with lengthy contentions in which, for the most part, he either overlooks or intentionally ignores the rule, to which we have heretofore referred, that it is the duty of this court to review the entire record, disregard all matters of the kind and character hereinabove emphasized, and then determine whether, in the face of all the evidence of record, the findings of the Commissioner are to be upheld or disapproved. When reviewed in the light of the foregoing rule we are convinced claims made by the accused relating to misconduct on the part of the Commissioner are wholly unfounded and that there is nothing in arguments advanced respecting abuse of discretion to either warrant or permit a conclusion this cause should not be disposed of on its merits.

In a further attempt to preclude a decision on the merits it is claimed the instant proceeding is ill conceived and has no basis in law or fact. This claim is based on the premise accused is the duly elected and qualified Judge of Division No. 3 of the Court of Common Pleas of Sedgwick County and that at all times material he has been and is now a judicial officer and not an attorney at law as is contemplated in G. S. 1949, 7-111, *et seq*. In other words the accused's position on this point is that, since he is a judge of the court above mentioned, it is only after forfeiture of office, ouster or resignation from office, that he can be subject to disbarment as an attorney. We must disagree. Notwithstanding, *In re Bar*

*Association,* 137 Colo. 357, 325 P. 2d 932—the only case cited by accused in support of his position which we pause to note we regard as clearly distinguishable—it is the law of the land, established by the great weight of authority, that an attorney possessing a license to practice law and holding a judicial position, such as is now occupied by the accused, is subject to disbarment in a proceeding of the character here involved. (*Mahoning County Bar Association v. Franko,* 168 Ohio St. 17, 5 Ohio Ops. 2d 282, 151 N. E. 2d 17, certiorari denied 358 U. S. 932, 3 L. Ed. 2d 305, 79 S. Ct. 312; *State ex rel. Nebraska State Bar Assn. v. Conover,* 166 Neb. 132, 88 N. W. 2d 135; *State ex rel. Nebraska State Bar Assn. v. Wiebusch,* 153 Neb. 583, 45 N. W. 2d 583; *In re Spriggs,* 36 Ariz. 262, 284 Pac. 521; *In re Peck,* 88 Conn. 447, 91 Atl. 274; *In re McGarry,* 380 Ill. 359, 44 N. E. 2d 7; *Hobbs' Case,* 75 N. H. 285, 73 Atl. 303; *In re Copland,* 66 Ohio App. 304, 33 N. E. 2d 857, appeal dismissed 137 Ohio St. 637, 32 N. E. 2d 23; *In re Rempfer,* 51 S. D. 393, 216 N. W. 355; *In re Burton,* 67 Utah 118, 246 Pac. 188; *State ex rel. Dill v. Martin,* 45 Wash. 76, 87 Pac. 1054; *In re Stolen,* 193 Wis. 602, 214 N. W. 379.) This, we add, is so even in Colorado. See *People v. Lindsey,* 86 Colo. 459, 283 Pac. 539.

Since the accused raises the point in arguments made in connection with the subject just determined it should be stated this is strictly a disbarment proceeding.

We now turn to contentions, common to all questions raised by the accused, which we believe are sufficiently important to require special mention.

One of such contentions is that the admission of the transcripts of evidence of divers witnesses procured by the attorney general in inquisition proceedings, pursuant to the provisions of G. S. 1949, 62-301, was erroneous, hence such transcripts should not have been considered by the Commissioner in making his report and cannot now be considered by this Court in reaching its decision. The record makes it clearly appear that these transcripts came into the proceeding, just prior to the close of the hearings, not only at the request of the accused but on agreement by the parties they would be furnished to the Commissioner. This was done. Under these circumstances, and assuming arguendo they would not have been otherwise admissible, the accused cannot now be heard to say such transcripts must be ignored or disregarded. This, we may add, is so notwithstanding the fact, as accused points out, they

were delivered to the Commissioner after the close of the hearings, as contemplated by the parties.

Another is that the accuser did not present its amended accusation to the Commissioner or give accused a copy at the time it announced it was going to request permission to file such a pleading. The record discloses the proposed amendment was filed with this Court on October 25, 1957, and a copy thereof mailed to counsel for accused on the same day. It further reveals that this was prior to the date of the hearings at which accused presented his evidence. In that situation it cannot be successfully argued the accused was in any way hampered in the presentation of his evidence while making his defense.

Thus, after a laborious review of the entire record and careful consideration of all important questions raised by the parties with respect thereto, we come to what we have decided must be the all-decisive question involved in this proceeding.

Does the evidence, taken by the Commissioner as it appears in the many volumes of the transcript, require approval of his findings of fact and conclusions of law?

In approaching this all important question it should be stated, at the outset, that it would be of no benefit to the bench or bar of this state and, of a certainty, could only result in injury to the accused to here spread upon our reports the sordid facts disclosed by the evidence. It suffices to say that, fully cognizant of the importance of our decision in this proceeding to both the accused and the public and mindful of the rights of all parties involved, we have read the entire record, consisting of approximately four thousand pages of printed matter, from cover to cover, and that after doing so we are not only impelled to conclude it discloses ample, substantial competent evidence to support the Commissioner's findings and conclusions but constrained to hold such evidence establishes that the accused has violated his oath as an attorney at law and committed acts of gross and wanton misconduct by reason of which his license to practice law in Kansas should be revoked and cancelled. Therefore, in the performance of our obligation in proceedings of the character here involved, it is our unpleasant duty to direct that he be disbarred and it is so ordered.

## APPENDIX

### Amended Accusation in Disbarment

TO THE SUPREME COURT OF THE STATE OF KANSAS:

The State Board of Law Examiners of the State of Kansas, consisting of Raymond F. Rice, Chairman; Dallas W. Knapp, Secretary; J. B. McKay and Elmer Euwer and W. P. D. Carey, having received information from John Anderson, Jr., Attorney General, of an investigation carried on by him, the said John Anderson, Jr., and having had under consideration certain charges therein complained of against John N. Stice of Wichita, Sedgwick County, Kansas, an Attorney at Law, who, previous to the occurrences herein recited, was admitted to practice as such in all of the courts of the state of Kansas; and having found reasonable grounds for believing that said John N. Stice, as such attorney at law, is guilty of willful violations of his oath of office and of the duties imposed upon him as such attorney at law, and that said John N. Stice is guilty of willful violations of the canons of legal ethics and of the standards of conduct required of him as an attorney at law; and having found that reasonable grounds exist for his disbarment as such attorney at law and that his guilt of the charges made can be proved, does hereby make against said John N. Stice accusations as follows:

### I.

That on or about the 14th day of November, 1956, he, the said John N. Stice did conspire together with one James Crisler, also known as Jimmie Crisler, William Anthony Gleeson, also known as Billie Gleeson, one Darrel Russell, also known as Pooter Russell, also known as Virgil Russell, Johnnie May Hull, also known as Johnnie May Cook, and one Roy S. Trail, to conceal from officers of the City of Wichita Police Department and officers of the Sheriff's Department of Sedgwick County, Kansas, the proceeds and contents of a safe which had been taken from the Standard Food Market, 4001 West Douglas, Wichita, Kansas, in a burglary on the night of November 13, 1956, which burglary was carried out by the said James Crisler and others, and further, that he, the said John N. Stice, did tell the aforementioned co-conspirators that the police would be watching them and that he, William Gleeson, and Roy Trail would go to pick up the safe from the location where it had been abandoned by the burglars on West Central and that he, the said John N. Stice, Gleeson and Roy Trail, would take the safe or

box to his, the said John N. Stice's home near Cheney, Kansas, and that he, the said John N. Stice would then call James Crisler at the Hillside Club, 3200 South Hillside, Wichita, Sedgwick County, Kansas, where this conversation took place, so that he, the said James Crisler and others, could come to John N. Stice's home to break open said safe or box for the purpose of securing any money or property therein contained.

## II.

That he, the said John N. Stice, did scheme and conspire together with Roy S. Trail, an attorney, Dale Justice, a bondsman, and with other persons known to him to be burglars, felons and persons of like moral character, to wit: James R. Crisler, Darrell Russell, also known as Pooter Russell, also known as Virgil Russell, William Anthony Gleeson, also known as Billie Gleeson, Charles Dyer, also known as Chuck Dyer, Charles Burnett, also known as Chuck Burnett, Gale Reneau, also known as Slick Reneau, James D. Stevenson, also known as Sleepy Stevenson, Benny Aeby, Buckey Housdon, also known as Louis Housdon, and others, to conceal the commission of burglaries, robberies and other felonies committed by various members of said conspiracy, and to prevent successful apprehension and prosecution of such felons by means of getting himself, the said John N. Stice, elected as Judge of the Court of Common Pleas of Sedgwick County, Kansas, in which position he intended to, and did conspire to, through his power as such judge, dismiss or delay preliminary hearings of any of his co-conspirators brought before him as such judge, that said scheme or conspiracy included an arrangement for the representation of any such co-conspirators arraigned, charged or set down before him in his capacity as judge, to be represented by Roy S. Trail as such co-conspirators' attorney, and for such persons to be released on bond through said Dale Justice.

## III.

That in November, 1956, the said John N. Stice, did in a conversation with James Crisler and Darrel Russell, also known as Pooter Russell, also known as Virgil Russell, discuss the plans for a burglary of an IGA Food Store at Mulvane, Kansas; that he, the said Stice, did assure Crisler and Russell that there would be $12,000 in said IGA store; that this conversation took place at Dett's Transfer Company, 147 N. Mead Street, Wichita, Sedgwick

County, Kansas, and in the course of the conversation Crisler and Russell agreed to pay Stice $500 apiece from the proceeds of the burglary; that Crisler and Russell proceeded to Mulvane, Kansas, and did break and enter said grocery store on or about the _____ day of November, 1956, but that they could not find a safe in the store, and instead, took about $100 in change from the cash register; that immediately after the burglary the said Darrel Russell did call the said John N. Stice by name over long distance telephone to his, the said John N. Stice's home at Cheney, Kansas, and report finding no safe in the building.

### IV.

That he, the said John N. Stice, did on various occasions state in substance to James Crisler and others, knowing them to be felons and burglars, that they need not worry about being caught or charged with burglary of an IGA store; that they would never be prosecuted on it, and on another occasion, in a conversation with police officers of the Wichita Police Department, that in substance he would represent these burglars so long as they had money and he did not care where they got it; that he, the said John N. Stice, did on various occasions receive by gift or purchase certain merchandise from burglars and felons, knowing it to be stolen at the time of such receipt by him.

### V.

That on April 12, 1957, he, the said John N. Stice, in the presence of Darrell Russell procured a false affidavit from Benny Aeby, the contents of which affidavit were in substance dictated to said Aeby by said Stice, a copy of which affidavit is marked State's Exhibit 1 and has previously been introduced in evidence in this cause; further that on April 11, 1957, the said John N. Stice, together with Roy S. Trail, did procure a false affidavit from James F. Whiteside, also known as James Brown, then an inmate of the Kansas Industrial Reformatory at Hutchinson, Kansas, the contents of which affidavit were in whole or in part dictated to the said James F. Whiteside by Roy S. Trail in the presence of said John N. Stice, a copy of which affidavit is marked Plaintiff's Exhibit 5, and has been previously introduced in evidence herein; that also on the 11th day of April, 1957, he, the said John N. Stice, did, together with Roy S. Trail, procure a false affidavit from William H. Dyer, then an inmate of the Kansas Industrial Reformatory at Hutchinson, Kansas,

which affidavit was prepared in the presence of Roy S. Trail and John N. Stice, a copy of which affidavit is marked Plaintiff's Exhibit 6 and had heretofore been received in evidence herein; that he, the said John N. Stice upon or about the ____ day of March, 1957, did procure or cause to be procured a false affidavit from Virgil Darrell Russell, also known as Pooter Russell, a copy of which false affidavit is a part of Plaintiff's Exhibit 9, previously introduced in evidence herein; that also on ____ day of March, 1957, he, the said John N. Stice did procure or cause to be procured a false affidavit from James R. Crisler, a copy of which affidavit has been marked Plaintiff's Exhibit 4, and heretofore been received as evidence herein; that also on the 13th day of April, 1957, and the 8th day of April, 1957, he, the said John N. Stice, did procure or cause to be procured two false affidavits from Johnnie May Hull, copies of which affidavits have been marked Stice Exhibits 4 and 5 and have heretofore been received as evidence herein; that he, the said John N. Stice, did cause all of the said false affidavits together with other affidavits of similar nature of other persons to be filed in the District Court of Sedgwick County, Kansas, in case No. A-65165, Stice v. Anderson, as exhibits attached to the petition therein; that such case in the District Court of Sedgwick County, Kansas, was fraudulently instigated and instituted by the said John N. Stice to impede and prevent the orderly progress and determination of the instant case.

VI.

That on or about the ____ day of November, or the ____ day of December, 1956, he, the said John N. Stice, did scheme and conspire together with one James Crisler, also known as Jimmie Crisler, and Darrell Russell, also known as Pooter Russell, also known as Virgil Russell, to burglarize the Pawnee IGA food store, located in the 1500 block, East Pawnee, Sedgwick County, Kansas; that in the course of the conversation he, the said John N. Stice, did tell to Pooter Russell and James Crisler in substance, that if they would burglarize the Pawnee IGA store on Friday or Saturday night they would be sure to find the amount of $12,000 in the safe and cash registers of said store; that pursuant to said conversation, said Crisler and Russell did proceed to break into and enter said Pawnee IGA store on the ____ day of November, 1956, together with certain other person, to wit, Benny Aeby, Joseph Roets and Bill Gleason, taking therefrom a sum of nearly $11,000 in

United States currency and coin from the safe and cash registers of said store; that immediately thereafter, the loot was divided among the participants, the said Darrell Russell's share being approximately $1958; that on the following Sunday, the said Darrell Russell did contact the said John N. Stice by telephone and did arrange a meeting in Wichita, Kansas, with John N. Stice, at which meeting Darrell Russell did pay to John N. Stice approximately $750 of Russell's share of the loot in United States currency and coin, the coin being paid in a bank sack taken from the Pawnee IGA store.

PART II

(Here follows charges against Roy S. Trail who is no longer involved in the case.)

WHEREFORE, the State Board of Law Examiners prays that the certificate and rights of said John N. Stice and Roy S. Trail, as Attorneys at Law, be cancelled and that they be disbarred from longer exercising any powers or rights thereunder; that their names be stricken from the roll of attorneys in the office of the Clerk of this Honorable Court, and that said Board recover its costs and such other relief as to the Court may seem just and equitable.