(No. 13111.—Rule made absolute.)

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* JULIAN KWASIGROCH, Respondent.

*Opinion filed February 15, 1921—Rehearing denied April 6, 1921.*

1. DISBARMENT—*when the relation of attorney and client is not changed to that of debtor and creditor.* Where an attorney collects money belonging to his client, who permits the attorney to keep the whole sum until after an election in which the attorney is a candidate, no note or receipt being given and no time fixed for payment or for settlement of the attorney's fees, the relation of attorney and client is not changed to the private relation of debtor and creditor.

2. SAME—*attorney occupies a fiduciary relation to client.* An attorney occupies a fiduciary relation to his client, and confidence is reposed in him not on account of his financial responsibility but because he bears the certificate of the Supreme Court that he is of good moral character and worthy to be entrusted with the interests, business and property of those who require his services.

3. SAME—*client's money in hands of attorney is a trust fund.* If an attorney receives money belonging to a client and there is no obstacle to its immediate payment the attorney should pay it over immediately, and if there is any obstacle to immediate payment he should hold it as a trust fund and not apply it to his own use.

4. SAME—*attorney who converts client's money to his own use should be disbarred.* If an attorney converts to his own use money belonging to a client he demonstrates his unfitness for his office as an attorney and should be disbarred, and it is no sufficient excuse that he becomes unable to pay through lack of means.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

BOBERT F. KOLB, for respondent.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

At the October term, 1919, by leave of court an information in the name of the People of the State of Illinois, on relation of the Chicago Bar Association, was filed, charging Julian Kwasigroch, respondent, with unprofessional

conduct as an attorney at law and calling upon him to show cause why his name should not be stricken from the roll of attorneys of this court.

The first count alleged that the respondent in the early part of the year 1916 had $550 belonging to and payable to his client, Joseph Janus, and that he thereafter converted the same to his own use and failed and refused to pay the same, or any part thereof, either to Janus in his lifetime or to Agatha Janus, his widow and administratrix, since his death, although repeated demands had been made for said money. To this charge the respondent answered, admitting that in February, 1916, he had said sum of money belonging to his client, Joseph Janus, but alleged that he requested of Janus a loan of the money until after the election to be held that fall, in which he was a candidate for office, and Janus agreed to loan the money to him until that time; that Janus afterward died, and after his death his widow, Agatha Janus, called upon respondent for a settlement, and he advised her that he could make no settlement with her until she was appointed administratrix of her husband's estate but was ready and willing to account and pay over the money less his fees for services, and that he stated the same thing to several attorneys afterward employed by Agatha Janus to obtain the money for her.

The second count charged that Ignatz Rybarczyk in March, 1915, employed the respondent to foreclose a mortgage given by one Wisnieski, upon which there was due $450 and interest, and paid respondent $16 to defray costs of commencing the suit, for which respondent gave a receipt; that thereafter respondent informed Rybarczyk that it was necessary to institute another suit to rectify defects in the mortgage, and Rybarczyk gave respondent $24 as costs in the additional suit, for which respondent gave a receipt; that respondent did not file any suit or proceeding but received the full amount of the claim without suit, and in answers to inquiries of Rybarczyk in the years 1915

and 1916 falsely stated that proceedings had been begun in the courts and were pending before a master in chancery; that said false statements were made from time to time until about January 1, 1917, when Rybarczyk learned that respondent had the money, but respondent denied it, and said that the money had been paid to the master in chancery and Rybarczyk would have to wait for the disposition of the proceedings before the master; that Rybarczyk on January 24, 1917, filed a complaint with the committee on grievances of the Chicago Bar Association, and respondent answered and after hearings made restitution to Rybarczyk about May 1, 1917. To this charge the respondent answered, admitting the receipt of the sums $16 and $24 as alleged, but averring that with the consent of Rybarczyk the mortgage was sold to Apolonia Marc for $450, to be held by respondent in escrow until defects in the mortgage could be cured; denying that he made any false statements, and admitting that he never filed any suit for Rybarczyk to foreclose the mortgage because of the arrangement to which Rybarczyk agreed. The respondent alleged that he performed other services for Rybarczyk and paid out money for him, and his account amounted to more than the amount received from Mrs. Marc for the mortgage; that in January, 1917, Rybarczyk became dissatisfied and demanded an accounting and brought the matter before the grievance committee of the bar association, and as a compromise on May 1, 1917, the respondent paid Rybarczyk $385 in full of his claim.

The third count charged that the general reputation of the respondent was bad and was such as to sustain a charge that he was not of good moral character, and this was denied by his answer.

The issues were referred to a commissioner to take and report the evidence with his conclusions. He took the evidence and reported the same, and as to the first and second counts reported that the charges therein contained were

proved, and he recommended that the name of the respondent should be stricken from the roll of attorneys. As to the third count the commissioner reported that the charge was not proved, and the relator took no exception to that finding, so that there is no issue as to the third count. The respondent excepted to the findings on the first and second counts.

Although the respondent by his answer admitted that he had the $550 belonging and payable to his client, Joseph Janus, and his defense was that it was loaned to him and was not thereafter in his possession as attorney, the record is incumbered with much detail concerning the circumstances under which the money was received by the respondent, none of which will be stated because immaterial. The defense made by the answer was that the respondent borrowed the money from Janus, and the relation of attorney and client then ceased and did not thereafter exist. If that was so the excuses offered by the respondent for not paying the money were superfluous and unnecessary to his defense, and if it was not so they were insufficient. The respondent testified that when he got a check for the money he and Janus went to his office, and he told Janus if he did not need the money and could let him have it he could make good use of it because he was running for office and perhaps Janus would not need it until that time; that Janus asked when he would give it back to him, and the respondent said within a month or two after his campaign, which was for the September primary election, and Janus said, "All right." No note, receipt or other paper was given at the time and no other time was fixed for repayment except as above stated, and while the respondent claimed that this conversation ended the relation of attorney and client, he always subsequently claimed that he did not owe the amount but there was an unsettled account for his fees and he could not be required to pay until the amount of his fees should be fixed. He was entitled to fees, and

the fair and reasonable meaning of what was said is that Janus was willing to let the respondent keep the money until after the September primary, in which the respondent was a candidate for judge of the municipal court, when they would have their settlement, and not that the relation between them was changed in any way from that of attorney and client to the private relation of debtor and creditor. That conversation was in February, 1916, and about the first of July, 1916, Janus became ill and his sickness lasted three months, ending in his death on October 2, 1916. Agatha Janus, the widow, testified that she called on respondent for the money during her husband's illness and that his excuse then for non-payment was that he had had hard luck; that she called on him after her husband's death and he never said anything about having borrowed the money. Mrs. Janus afterward employed successively three attorneys to get the money from the respondent, and he never claimed to either of the attorneys that he had borrowed the money. That claim was first made in the answer in this case. At first the respondent objected to payment because there was no administrator of the estate, and Mrs. Janus was appointed administratrix on October 17, 1917. The amount due from the respondent was the only asset scheduled as property of the estate, and neither the administratrix nor either of her attorneys ever succeeded in getting any money from the respondent. He said at times that his fees had not been fixed, but there was no obstacle whatever to his deducting what he claimed as fees, which is the natural and usual course when paying over a balance; and this is so whether Mrs. Janus or anyone else claimed that he was not entitled to fees or to an amount claimed. At one time he gave an attorney a bill of sale of his office furniture and a stock certificate, which was returned to him, and the respondent claimed that he gave the bill of sale and the stock certificate not in payment but to show his good faith. Another attorney after-

ward employed by. Mrs. Janus sued the respondent in the municipal court of Chicago on February 3, 1919, and re-covered a judgment by default for the whole sum and in-. terest and costs, and the respondent paid the judgment on November 12, 1920, since the report of the commissioner was filed.  Counsel for respondent says that in the settle-ment of the judgment Mrs. Janus allowed the respondent $100 as fees for his services, the settlement being for $450 and interest thereon and $7 costs.

In March, 1915, Ignatz Rybarczyk employed respond-ent to foreclose a mortgage of one Wisnieski, on which there was due $450 and interest, and paid respondent the ·sums alleged in the information and admitted by the an-swer for costs in the foreclosure and to rectify defects in the mortgage.  The respondent did not file any bill to fore-close the mortgage but sold it to Apolonia Marc and re-ceived from her the amount of the mortgage in December, 1915, and March, 1916.  Rybarczyk and the respondent are Poles and their arrangements were made in the Polish lan-guage.  The respondent alleged in his answer, and testi-fied, that the mortgage was sold to Apolonia Marc under arrangement with Rybarczyk, who said it was all the same to him so long as he got his money; that he filed a bill for Mrs. Marc and had the bill dismissed on account of having to re-draw it and other difficulties to clear the mat-ter up.  Rybarczyk spoke English imperfectly, and he and his daughter testified that the respondent told them at va-rious times during the years 1915 and 1916 that he had started foreclosure proceedings and the matter was pend-ing before a master in chancery; that it would take a year and a half before the case would be settled with the mas-ter in chancery; that he gave them the number of the case and the name of the master in chancery and there was no case under the number he gave; that he said Ry-barczyk was foreclosing the mortgage, and one time he said it was vacation and the master in chancery was in

Iowa. In January, 1917, Rybarczyk learned that the mortgage had been paid and demanded an accounting but obtained none. On January 24, 1917, he filed a complaint with the grievance committee, which was answered by the respondent. The parties appeared before the committee several times, and about May 1, 1917, the respondent sent his check to Rybarczyk for $385 in payment of the claim. Rybarczyk had employed the respondent in other matters and the respondent had received money in them and had charges against Rybarczyk which exceeded the amount received of the sale of the mortgage, according to his book account.

An attorney occupies a fiduciary relation to his client, and confidence is reposed in him not on account of his financial responsibility but because he bears the certificate of this court that he is of good moral character and worthy to be entrusted with the interests, business and property of those who require his services. If he receives money belonging to a client and there is no obstacle to its immediate payment, the only course consistent with his office is to pay it over immediately, and if there is any obstacle to immediate payment, to regard it as a trust fund and not appropriate it to his own use. If an attorney converts to his own use money belonging to a client he demonstrates his unfitness for his office as an attorney, and it is no sufficient excuse that he becomes unable to pay through lack of means. Financial misfortune may overtake anyone, but it need not be coupled with the dishonor of having violated duty. In the transactions with his clients, Janus and Rybarczyk, the respondent never paid or offered to pay anything until after complaints were made to the grievance committee of the bar association, and in the case of Janus not until an adverse report had been made by the commissioner. He kept the money of Janus for over four years without reasonable excuse, during which time the administratrix employed different attorneys to obtain the money,

and he never even offered to pay such amount as he himself conceded would be due. In the discharge of duty to the public the court cannot permit his name to remain on the roll of attorneys as a proper person to be entrusted with the money or interests of persons needing legal services requiring honesty and freedom from moral delinquency.

The rule will be made absolute and the name of the respondent will be stricken from the roll of the attorneys of this court.

*Rule made absolute.*