(No. 21871.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* JULIAN KWASIGROCH, Respondent.

*Opinion filed June 15, 1934—Rehearing denied October 3, 1934.*

JOHN L. FOGLE, (TAPPAN GREGORY, of counsel,) for relator.

JULIAN KWASIGROCH, *pro se.*

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

An information in the name of the people of the State, on the relation of the Chicago Bar Association, was filed charging Julian Kwasigroch with unprofessional conduct as an attorney and counselor at law and asking the removal of his name from the roll of attorneys. The respondent answered the information. The cause was referred to a special commissioner who reported the evidence with his

conclusion therefrom that the charges made were sustained. The respondent filed objections to the report which the commissioner, in a supplemental report, overruled. The objections have been ordered to stand as exceptions and upon the record thus made the cause is submitted.

It is charged in the information that on January 25, 1932, the respondent sold to Clara M. Smolinski, a client and his fiancé, for $1800, instruments purporting to be promissory notes aggregating in principal $2000, together with a trust deed in the nature of a mortgage on the equity of redemption in certain real estate to secure their payment; that the respondent had forged or caused to be forged to these instruments the name of Anton Vlcek, a former client and the owner and occupant of the premises ostensibly incumbered by the trust deed; that he sold the instruments to Miss Smolinski as the valid obligations of Vlcek; that he paid her on account of the forged instruments $50 each month until September, 1932, and that during the hearings upon the complaint she filed against him with the committee on grievances of the Chicago Bar Association, he made restitution of the remainder of the money he had obtained from her.

By his answer, the respondent denied that he forged the notes and the trust deed or that he caused them to be forged; he averred that, at Miss Smolinski's request, he made a loan to one Anton Vlcek, a client he had represented for fifteen years; that the notes and the trust deed were executed in his presence; that he delivered them to Miss Smolinski and that she paid Vlcek, through him, $1700 for them; that Vlcek made payments on the notes to Miss Smolinski through his office and that the remainder of the money she advanced, after deducting fees she owed the respondent, was paid to her on November 17, 1932.

Julian Kwasigroch, the respondent, was licensed as an attorney and counselor at law of this State on April 3, 1912. His name was stricken from the roll of attorneys

on February 15, 1921. (*People* v. *Kwasigroch,* 296 Ill. 542). Subsequently, on April 17, 1930, his name was reinstated on the roll and he has been engaged since in the practice of his profession in the city of Chicago. On September 21, 1931, Clara M. Smolinski retained him to foreclose three mortgages. Early in January, 1932, she complained to him that she had been unfortunate in making investments. He remarked that she had not invested her money through responsible parties; that loans negotiated by him had always been paid; that one of his clients who was reliable had certain obligations to meet and that, to discharge them, he desired to borrow money upon a good mortgage. She replied that if he considered the man reliable she might make the loan. A few days later the respondent informed her that the client Anton Vlcek, would execute a mortgage for $2000, which she could purchase for $1700. She gave him the money and received in return twenty-four promissory notes and a trust deed to secure their payment, all of which the respondent represented Anton Vlcek had executed. The instruments were dated January 25, 1932. Of the notes twenty-three were for $50 each and the twenty-fourth was for $750, and they were made payable monthly, beginning on February 25, 1932. Property known as 2733 South Hancock avenue, now 2733 South Court, in the city of Chicago, was described in the trust deed and the respondent was the grantee. The trust deed was not recorded until July 28, 1932, when, acting upon the advice of another attorney, Miss Smolinski caused it to be filed for record.

At the time the notes and the trust deed were executed, Miss Smolinski and the respondent were engaged to be married and a day had been fixed for the wedding. Although the engagement was subsequently broken, the respondent acted as her attorney until August 2, 1932. After five of the notes purporting to be signed by Vlcek had been paid, Miss Smolinski demanded immediate payment of the

remainder of the notes. The respondent testified that he told Miss Smolinski he would direct his client Vlcek to pay her as she requested, but that, by payment prior to maturity, she would receive in principal only the sum she had actually advanced; that when the mortgagor called at his office to pay the sixth note, he informed him of the demand made by Miss Smolinski; that her attitude angered Vlcek, but that he paid the seventh note in due course, and that he obtained $1350, the sum required to pay the remaining notes, and paid it to the respondent in September, 1932.

The respondent rendered Miss Smolinski a statement from which it appears that he fixed his unpaid solicitor's fees in the foreclosure suits at $375; that she had paid him $80.23 in excess of the court costs and other expenses, and that accordingly, there remained owing to him $294.77. Deducting this sum from $1350, which he testified Vlcek had left with him to make settlement with Miss Smolinski, he tendered the remainder to her in satisfaction of all her claims upon the condition that she return the notes and the trust deed which he had represented to her were Vlcek's obligations. Miss Smolinski refused to accept the offer. Later, on November 17, 1932, however, she accepted $1300 from the respondent and delivered to him a release of all demands, including any claim arising out of the sale of the controverted notes and trust deed. The respondent did not return these instruments to Vlcek, nor did he refund to him the difference of $50 between the sum he had received from Vlcek and the sum he had paid Miss Smolinski. This difference, he stated, was allowed him by Miss Smolinski for his services and disbursements in her behalf.

Anton Vlcek testified that on, prior to and since January 25, 1932, he and his wife owned and occupied the premises described in the trust deed which the respondent delivered to Miss Smolinski; that he neither signed the trust deed nor the notes it purported to secure; that on January 25, 1932, there were two incumbrances upon his

residence, namely, a first mortgage for $2500 and a second one for $500; that he never received $1700 or any other sum from Miss Smolinski, and that he first became apprised of the purported incumbrance dated January 25, 1932, when Miss Smolinski inquired at his home when he intended to make payments upon it. Vlcek further testified that on August 19, 1931, he entered into a contract with the respondent relating to the foreclosure of a mortgage the former held on a parcel of property in Riverside; that his signature appears on the contract and that he left with the respondent on that day various documents, including deeds in the chain of title to, and an owner's guarantee policy on, his home. Vlcek obtained from the respondent a release of the trust deed which Miss Smolinski had purchased and $5 to pay for recording it. The release was filed for record on September 12, 1932.

To establish his defense that another person named Vlcek had signed the notes and the trust deed, the respondent testified that he had been acquainted with this particular person since 1918; that he had met him on nine or ten different occasions in connection with legal transactions, but could not recall the precise nature of any of them; that it was his impression the same person had obtained a loan on the same property from the respondent's brother-in-law in the year 1919; that he, the respondent, did not investigate the title but relied solely upon the mortgagor's statement that he owned the property. Later, the respondent testified that Vlcek, the purported mortgagor, acquired title to the property after the latter's wife had obtained a divorce from him; that his knowledge of the divorce was derived wholly from statements made by Vlcek and that at the time the notes and the trust deed were drawn the respondent did not search the public records, nor obtain some evidence of title, nor make any other investigation to determine whether the ostensible mortgagor owned the property.

The respondent claimed that the second Anton Vlcek had been employed by the Pullman Car and Manufacturing Corporation and that he also dealt in real estate. Arthur O'Leary, the employment manager of that company, testified that no man named Anton Vlcek had been in its service between 1918 and May 16, 1933, the date of the hearing at which he appeared. The actual owner of the property described in the trust deed knew of no other person whose name was Anton Vlcek. Miss Smolinski testified that in June, 1932, she requested the respondent to give her Vlcek's address; that he informed her it was 1632 Rogers avenue, in Rogers Park, Chicago, but that upon investigation she was unable to find any such number. The respondent denied that he gave her any such address, and asserted that Vlcek, the mortgagor, lived at 934 Fowler street. A witness testified that Fowler street had no such number.

Jay F. Wood and Howard A. Rounds, examiners of disputed documents, testified on behalf of the relator and the respondent respectively. The signature to the trust deed and the seventeen notes last maturing was examined by the witness Wood and he stated that it was not genuine but an attempt to imitate the admitted signature of Anton Vlcek to the contract he made with the respondent on August 19, 1931. The witness Rounds expressed the opinion that the signature to the notes and the trust deed was the genuine signature of some person.

The contention of the respondent is that the findings and conclusion of the commissioner are contrary to the evidence. The respondent induced Clara M. Smolinski, a client, to invest $1700 in a mortgage which he told her another client, one Anton Vlcek, had executed. The mortgagor, he represented to her, lived at a certain address, was employed by the Pullman Car and Manufacturing Corporation and had been his client for fifteen years. Upon investigation, the mortgagor could not be found either at the

address given or elsewhere; he had never been employed by the corporation named, and he did not appear before the commissioner to testify. The respondent was unable, upon interrogation, to indicate the nature or character of the transactions in which he appeared for Vlcek in his professional capacity. He admitted that he invested Miss Smolinski's money without making an examination of the title to the property which he said secured the payment of the loan and he failed to file the trust deed for record. The owner and occupant of the property described in the trust deed testified that he never signed the notes and the trust deed which the respondent delivered to Miss Smolinski; that he neither borrowed nor received any money from her, and that he first obtained knowledge of the purported incumbrance when she made inquiry of him concerning payments to be made upon it.

The evidence shows clearly that Anton Vlcek, the alleged mortgagor, was a fictitious person and that the respondent's conduct in the transaction with Clara M. Smolinski, his client, respecting the spurious mortgage was fraudulent in the extreme. It is true that he made restitution after a complaint had been filed against him, but that fact will not absolve him nor preclude inquiry into the professional propriety of his acts prior to and in connection with the settlement he effected. (*People* v. *Hansen,* 352 Ill. 144; *People* v. *Grusd,* 318 id. 44; *People* v. *Chamberlain,* 242 id. 260). From the facts established, the conclusion is inescapable that the license of this court to practice law, whereby persons requiring the services of an attorney might be induced to repose confidence in the respondent and to entrust their property and interests to his care, should no longer be borne by him.

The report of the commissioner is confirmed. The rule is made absolute and the name of the respondent is again stricken from the roll of attorneys of this court.

*Rule made absolute.*