COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT of the IOWA STATE BAR ASSOCIATION, complainant, v. ATTY. FREDERICK J. KRASCHEL, Council Bluffs, respondent.

No. 52338.

(Reported in 148 N.W.2d 621)

188

FEBRUARY 7, 1967.

REHEARING DENIED MARCH 7, 1967.

Hedo M. Zacherle and Lee H. Gaudineer, both of Des Moines, for complainant.

Emmet Tinley, of Council Bluffs, for respondent.

MASON, J.—This is an appeal by respondent Frederick J. Kraschel, a practicing attorney, from the ruling and recommendation of the third division of the grievance commission of

this court in disciplinary proceedings pursuant to Supreme Court Rule 118 as amended.

A complaint was filed against respondent with the commission by the committee on professional ethics and conduct of the Iowa State Bar Association alleging professional misconduct, violation of the canons of ethics and statutes of Iowa by commingling, converting and embezzling trust funds and failure to timely file federal and state income tax returns.

In answer respondent denied he was guilty of such conduct.

After hearing before the commission in accordance with the proceedings prescribed by it under rule 118, respondent was found guilty of various counts of conversion and embezzlement and failure to timely file federal and state income tax returns.

The commission recommended to this court that, provided respondent make payment to two parties, his license be suspended for two years and he be placed on probation for two years thereafter.

The respondent filed exceptions thereto and appeals, contending the record not only fails to support the recommendation of the commission by clear, satisfactory and convincing proof, but fails to establish satisfactorily dishonest or fraudulent motives on his part; that failure to timely file income tax returns does not involve moral turpitude and the penalty imposed was too severe.

Complainant urges in support of the recommendation that the practice of law is a privilege, not a vested right that may be withdrawn at anytime a person is shown to be unfit to continue; there is clear, satisfactory and convincing evidence to support the commission and failure to timely file required state and federal income tax returns involves moral turpitude.

I. Respondent, 52, was admitted to practice law in June 1939 but did not go into the practice at that time. Following five years in military service he went into the farming and feed business, later he was in the industrial equipment business in Omaha, actually entering the practice of law in Council Bluffs in the summer of 1963.

On March 17, 1966, respondent was notified by the secretary of the Iowa State Bar Association that a complaint had been

filed with him, alleging respondent had committed unethical practices as an attorney. A copy of the complaint, rule 118 and the rules of the commission relating to hearing the complaint were attached to the notice. At the hearing respondent was represented by his present attorney.

In the complaint as filed eight different matters were alleged in count one, all in violation of the canons of ethics; in count two an additional violation for failure to file federal and state income tax returns for 1963 and 1964 was alleged. An amendment to the complaint cited an additional violation. The complaints, other than income tax violations, all relate to a failure to account for funds.

On the day of trial a stipulation was filed between complainant and respondent, that if certain witnesses were called they would testify as set forth therein.

II.  The first complaint involved a $1000 settlement made by respondent for his client. On the date of settlement, October 26, 1963, $300 was paid respondent and he received monthly payments totaling $525 thereafter. Respondent deposited the money thus received in his bank account and despite repeated requests for accounting and payment he did not remit the initial $300 until February 9, 1966, after investigation by complainant had commenced. At the hearing respondent recognized the moneys were held in trust for the client and the commission found this incident supported by the evidence.

Another incident involved collection of bond premiums totaling $112.35 which respondent failed to remit to the bond company. At the hearing he admitted receiving statements from the company, considered the collections an open account and recognized the funds were held in trust by him. No attempt was made to remit these funds until the investigation had commenced. He then made full payment February 11, 1966.

Still another incident involved money received December 1964 on a subrogation claim for a client. The proceeds were deposited in respondent's account and no payment was made to the client until February 5, 1966.

A complaint was made involving collection of accounts for a client where a dispute arose as to the amount of net collections,

which was finally resolved at the agreed ·figure of $194.25. Respondent delivered his check dated October 23, 1964, to his client. The check was promptly deposited but was dishonored on three occasions. He made no reasonable effort to honor his settlement agreement made in November 1964, until he employed an attorney to represent him and made settlement in May 1965.

A further complaint involved partial collection of an account for a Des Moines client on January 19, 1964. Respondent made no attempt to make settlement until investigation by complainant had been commenced and finally remitted on July 31, 1965.

The complaint alleged in the amendment involved money received from a client to make settlement of a matter pending against him. The client testified at the hearing he gave respondent $150 in cash and was given a receipt but was unable to locate it. This incident was supported by the client's daughter who testified she had seen the receipt when her father left respondent's office. The client also testified he gave respondent an additional check for $150 a week or so later as a final payment on the $300 settlement. Respondent remitted the $150 to the plaintiff in the action and plaintiff's attorney· said respondent informed him he had an additional $100 but did not know when he would get the remaining $50. At·the hearing respondent testified he had no recollection of this conversation nor receiving the $150. However, the commission found this complaint supported by the evidence.

With reference to respondent's failure to file federal income tax returns, he admitted he had not submitted returns for 1963 and 1964 until April 22, 1966, and had not initiated conferences with the revenue service until after July 1, 1965. Respondent also failed to file state income tax returns for 1963 and 1964. stating he was not required to do so for those years. However, the commission found the copies of the federal· returns submitted indicated sufficient net income to require filing a state income tax return.

III. Respondent maintained two bank accounts for a year after commencing the practice in connection with the operation of his office. Thereafter he maintained one account to the date

of hearing for all funds for the operation of his office and funds belonging to his clients. He commingled his funds and the balance in the account was substantially less at most times than the amounts collected for his clients.

The commission found the evidence clearly established respondent soon after starting to practice received on numerous occasions money in trust for clients which he commingled with his own funds, the trust funds thereby losing their identity in one bank account; that he not only failed to account for these funds promptly but ignored repeated requests for status and accounting and did in fact convert those funds to his own use for an unreasonable length of time. The commission also found respondent's belated action in remitting to his clients was, in part at least, motivated by the investigation of the complainant.

■ IV. The practice of law is a privilege and not a vested right. In re Disbarment of Meldrum, 243 Iowa 777, 784, 51 N.W.2d 881, 884.

■ ■ "A disciplinary proceeding is basically an inquiry into the fitness of a member of the bar, in the light of his conduct, to continue in the practice of the law." In re Simmons, 65 Wash.2d 88, 94, 395 P.2d 1013, 1016. This proceeding is not criminal, but is special, civil in nature, and has been described as like an investigation by the court into the conduct of its officers. State v. Clarke, 46 Iowa 155, 159; In re Stice, 184 Kan. 589, 339 P.2d 29, 31; Prime v. State Bar of California, 18 Cal.2d 56, 112 P.2d 881, 884; State ex rel. Oklahoma Bar Association v. Massad, 334 P.2d 787, 791, and citations; In re Morford (Del.), 80 A.2d 429, 432; In re Pennica, 36 N. J. 401, 177 A.2d 721, 730.

■ The extent of persuasion required of the prosecution in disbarment proceedings does not vary according to the type of conduct charged, regardless of whether it amounts to a crime or merely professional misconduct. In re Disbarment of DeCaro, 220 Iowa 176, 185, 262 N.W. 132, 136; In re Farris, 229 Ore. 209, 367 P.2d 387, 391, 392.

■ As to the degree of proof necessary in disbarment proceedings we approve the following from the Delaware Supreme Court, In re Morford, supra:

194

"The reported cases are not in harmony upon the question of the degree of proof required. A rather extensive collection of them will be found at 105 A. L. R. 985. The courts have ranged from a requirement of proof by the preponderance of the evidence to a requirement of proof beyond a reasonable doubt. We think the proper rule lies between these two extremes, for the reason that proceedings of this type are neither wholly civil nor criminal in nature. In adopting this rule, we are adopting the rule of the numerical and, we think, better considered weight of authority. It is difficult to define exactly the degree of proof required, but we think the clearest expression of a definition is to require that the charges be proved by a convincing preponderance of the evidence. Obviously, this requirement is something less than required in a criminal prosecution, and is something more than is required in a civil proceeding."

V. The matter is triable de novo in this court and will be so considered by us. Rule 118.

The ultimate issue before the commission was the fitness of respondent to practice his chosen profession. State v. Kaufmann, 202 Iowa 157, 159, 209 N.W. 417. In determining the issue the allegations of the complaint established by the required proof are viewed together and not separately.

As stated, much of the evidence introduced was by stipulation. Respondent as a witness admitted having collected various amounts for clients which he commingled with his own funds; failed to remit money due them for periods varying from six months to over two years; gave a check to a client in payment of funds collected by him which was dishonored for insufficient funds; there was no reason why he did not remit money owed to clients held in trust by him other than incompetent help and financial problems growing out of domestic trouble resulting in a divorce; he did not know whether he had money in the bank but did recognize the money was held in trust. Respondent did not recall receiving some of the inquiries from attorneys concerning clients' accounts, he did not have his file with him but admitted having no doubt he received the correspondence and did nothing about the inquiries. There was evidence that on occasions respondent did promise to check on

complaints made by attorneys with reference to clients' accounts but failed to do so.

No useful purpose would be served by further detail of the incidents presented before the commission. It is sufficient to say the commission found respondent's conversion to his own use or embezzlement of his clients' money on six occasions established a pattern of conduct detrimental to the public and a lack of conception of the duties and responsibilities of a member of the legal profession and this conduct was coupled with respondent's flagrant violation of the tax laws.

The commission concluded that disciplinary action was warranted.

We agree with the commission's finding and are satisfied the incidents set out, supra, were established by the necessary quantum of proof.

VI. Respondent contends any violations on his part were not of such nature and the amounts involved were not of such size as to require the drastic action of a suspension of his license for any period of time; that he had not been charged with conviction of a felony or misdemeanor involving moral turpitude, willful disobedience toward or violation of the order of any court, disrespectful conduct toward a court or judge, or solicitation of legal business.

It is true respondent had not been charged or convicted of a felony or misdemeanor, but as we have said this is not a criminal action but an inquiry into respondent's fitness to continue the practice of law. They resolved the question against respondent and we think there was basis for their determination.

Canon 11 of the canons of professional ethics adopted by this court, rule 119, provides:

"Dealing with trust property. The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under

any circumstances be commingled with his own or be used by him."

Section 610.21, Code, 1966, provides:

"Unlawful retention of money. An attorney who receives the money or property of his client in the course of his professional business, and refuses to pay or deliver it in a reasonable time, after demand, is guilty of a misdemeanor."

"Whatever might be said in favor of a milder punishment for single misdemeanors not involving deliberate moral turpitude, there is no doubt in our minds that any lawyer who is guilty of habitual misuse of the funds of his clients should be deprived of the license under which he is authorized to practice law, and by which he has been recommended to the public as a person worthy of trust." Mills v. State Bar of California, 6 Cal.2d 565, 567, 58 P.2d 1273, 1274.

"The practice of law is a privilege, highly esteemed and respected. Attorneys who violate the trust of their clients by the embezzlement of their funds, as here occurred, not only are guilty of criminal violations but also of an utter breach of faith to the public, to the courts, and to their fellow lawyers. Respondent's conduct cannot be condoned by this court and no later release of civil liability given by his client removes the stigma of his conduct. His own admissions, * * * show him to be unfit to engage in the practice of law. His * * * [testimony] has failed to explain away or justify his conduct." People v. Kistler, 144 Colo. 62, 66, 354 P.2d 1022, 1024.

In In re Royal, 29 Ill.2d 458, 464, 194 N.E.2d 242, 245, the Illinois Supreme Court stated:

"We have held that, in the absence of mitigating circumstances, the conversion of one's client's funds is inexcusable and requires that the attorney be disbarred. 'Other offenses might be excused, but conversion to his own use of the property of his client is an offense that cannot in any degree be countenanced' [citing cases].

"Again in People ex rel. Chicago Bar Assn. v. Kwasigroch, 296 Ill. 542, 548 [130 N.E. 344, 346], it is said 'An attorney occupies a fiduciary relation to his client, * * *. If he receives money belonging to a client and there is no obstacle to its im-

mediate payment, the only course consistent with his office is to pay it over immediately, and if there is any obstacle to immediate payment, to regard it as a trust fund and not appropriate it to his own use. If an attorney converts to his own use money belonging to a client he demonstrates his unfitness for his office as an attorney, * * *.' "

Complainant has furnished many additional citations tending to support the foregoing proposition, among them are Ohio State Bar Association v. Gray, 1 Ohio St.2d 97, 204 N.E.2d 683; In re Petti, 36 N. J. 146, 175 A.2d 609; In re Dinitz, 23 App. Div.2d 799, 259 N. Y. S.2d 174; Clark v. State Bar, 39 Cal.2d 161, 246 P.2d 1.

Respondent's bank account as evidenced by exhibits "O" and "P" established that his balance on many occasions fell far below the sum held in trust for any one of the six individuals. It is obvious to us that the funds of these clients were converted to respondent's own use.

VII.    Respondent contends failure to timely file income tax returns does not involve moral turpitude. He cites in support thereof State v. Roggensack, 19 Wis.2d 38, 119 N.W.2d 412, and Baker v. Miller, 236 Ind. 20, 138 N.E.2d 145, which precedes an annotation in 59 A. L. R.2d 1393.

Complainant on the other hand contends the failure *by an attorney* to timely file required federal and state income tax returns does involve moral turpitude and he need not be convicted before it is a violation of the canons, citing 13 cases from 10 jurisdictions. As will appear from the annotation in 59 A. L. R.2d and the cases listed in the Later Case Service, the authorities are not entirely agreed on the question whether moral turpitude is involved after conviction. See also 7 Am. Jur.2d, Attorneys at Law, section 51.

"Although the problem of defining moral turpitude is not without difficulty [citing cases], it is settled that whatever else it may mean, it includes fraud and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude." In re Hallinan, 43 Cal.2d 243, 247, 272 P.2d 768, 771.

In State v. Roggensack, supra, 19 Wis.2d, at 44, 119 N.W.2d, at 416, after reviewing a finding by a referee that there was no evidence whatever of moral turpitude as that term has been defined, although defendant was there convicted by the state court of income tax violation, the court said:

"Nevertheless, the fact that defendant was not guilty of moral turpitude, in the sense of an intention to evade payment of taxes, does not relieve him from discipline. This is because defendant's failure to file income-tax returns, after being repeatedly notified by the department to do so, was intentional on his part even though he did not expect thereby to escape payment of any taxes. Canon 32 of the Canons of Professional Ethics of the American Bar Association describes the duty of the lawyer in part as follows:

" '*He must also observe* and advise his client to observe *the statute law,* though until a statute shall have been construed and interpreted by competent adjudication, he is free and is entitled to advise as to it's validity and as to what he conscientiously believes to be its just meaning and extent' (Italics supplied)."

In support of this contention respondent argues all that now appears is he did not make timely filing of income tax returns; the internal revenue service has not charged fraud which would be an essential element of moral turpitude but has only charged negligence.

Although respondent has neither been indicted nor convicted of income tax violations, the facts surrounding his failure to timely file are sufficiently shown in the record to warrant affirmative action in this proceeding. State v. Metcalfe, 204 Iowa 123, 127, 214 N.W. 874, 875.

Assuming for the sake of argument that respondent had been indicted and acquitted, disciplinary action might still be warranted under certain facts.

"Acquittal of a member of the bar following trial of a criminal indictment is not *res judicata* in a subsequent disciplinary proceeding based on substantially the same charge or conduct [citing authorities]. Not only are the parties different but the purposes of the two proceedings are different. In the disciplinary matter, the primary purpose is not to punish an

offender; it is to protect the public against members of the bar who are unworthy of the trust and confidence essential to the relationship of attorney and client; it is to ascertain whether the conduct of the attorney involved has demonstrated his unfitness to practice law, and if so to deprive him of his previously acquired privilege to serve as an officer of the court." In re Pennica, supra, 36 N. J., at 418, 177 A.2d, at 730. .

We hold willful failure by a member of the legal profession to file income tax returns as required by law warrants professional disciplinary action. We do not deem it necessary to determine whether moral turpitude is involved here.

VIII. The commission recommended the respondent's license to practice law in the various courts of Iowa be revoked unless he made restitution of $25 advanced suit money to Ann Mortensen and $150 to Ray Dietzel within 30 days of the filing of their recommendation. If such restitution was made within 30 days the commission then recommended the license of the respondent be suspended for two years and he thereafter be placed on probation for an additional two years.

We are advised in respondent's written argument that he transmitted to Ann Mortensen's attorney $25 as suit money advanced by her and deposited $150 with his attorney to be delivered to P. & C. B. Employees Credit Union to the credit of Ray Dietzel in the event this court should affirm the commission.

In In re Disbarment of DeCaro, supra, 220 Iowa, at 184, 262 N.W., at 136, we said: .

" 'In arriving at the punishment which should be imposed, each case must be largely governed by its particular facts, and the matter rests in the sound discretion of the court. *The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession.* A removal from the bar should not be decreed where any punishment less severe, such as reprimand, temporary suspension, or fine, would accomplish the end desired,' " quoting 6 Corpus Juris 612 (now 7 C. J. S., Attorney and Client, section 38).

From a review of the proceedings we conclude the commissioners have carefully weighed the question of the discipline to be recommended and respondent has no ground for complaint. The recommendation is not, in our opinion, unduly harsh and we adopt it. Payment of the $150 shall be made within 20 days from the filing of this opinion.

The recommendation of the commission is—Affirmed.

All JUSTICES concur.