**COMMITTEE ON PROFESSIONAL ETH-
ICS and Conduct of the Iowa State
Bar Association, Complainant,**

v.

**Robert A. WRIGHT, Respondent.**

**No. 54185.**

Supreme Court of Iowa.

July 15, 1970.

Lee H. Gaudineer, Jr., Des Moines, for complainant.

Patterson, Lorentzen, Duffield, Timmons & Irish, Des Moines, for respondent.

BECKER, Justice.

This is a hearing on complaint of professional misconduct by respondent attorney, Robert A. Wright. Hearing was held before the Grievance Commission of the Iowa Supreme Court, Second Division. After hearing testimony and consideration of the evidence the five member commission unanimously found respondent guilty of substandard, unprofessional and unethical conduct in that he failed to perform his duty as a lawyer in representing his client. The decision and recommendation concludes:

"The Commission determines that the respondent, Robert A. Wright, should be suspended from the practice of law for a period of two years, effective with the date of this order, and further provides that after the expiration of the first twelve months of this period of suspension, on a showing made to the Supreme Court of Iowa, that acceptable restitution has been made to Mrs. Gertrude I. Hall, or her successors, or personal representatives, that the Supreme Court may, upon application of the respondent, reinstate the license of such respondent on such terms and at such time as the Court sees fit, but that in no event shall the continuous suspension of the respondent from the practice of law be less than the first full twelve months herein provided for."

Respondent filed Exceptions to the Findings of Fact, Conclusions of Law, Decision and Recommendation and the matter has

been presented to this court for judgment. We adopt and act on the Commission's recommendations.

I. Since the decision is actually made by this court in the first instance, we review the evidence de novo. Supreme Court Rule #118.

Several rules to be initially noted are found in Iowa State Bar Association v. Kraschel, 260 Iowa 187, 148 N.W.2d 621, 625:

" 'A disciplinary proceeding is basically an inquiry into the fitness of a member of the bar, in the light of his conduct, to continue in the practice of the law.' In re Simmons, 65 Wash.2d 88, 395 P.2d 1013, 1016. This proceeding is not criminal, but is special, civil in nature, and has been described as like an investigation by the court into the conduct of its officers. State v. Clarke, 46 Iowa 155, 159; In re Stice, 184 Kan. 589, 339 P.2d 29, 31; * * *.

"The extent of persuasion required of the prosecution in disbarment proceedings does not vary according to the type of conduct charged, regardless of whether it amounts to a crime or merely professional misconduct. In re Disbarment of DeCaro, 220 Iowa 176, 185, 262 N.W. 132, 136; In re Farris, 229 Or. 209, 367 P.2d 387, 391–392."

The Kraschel case, supra, also determines the degree of proof shall be by a "convincing preponderance of evidence". (loc. cit. 260 Iowa at page 194, 148 N.W.2d 621).

II. The complaint against respondent, Robert A. Wright, involves his actions as attorney for Mrs. Gertude I. Hall and his actions after he had ceased to be Mrs. Hall's lawyer. We considered the initial factual situation giving rise to the complaint in Hall v. Wright, 261 Iowa 758, 156 N.W. 2d 661 but our consideration there was "for errors at law" and was limited to the issues of fraud presented on the appeal. In making this judgment we must come to our own factual conclusions.

III. The record consists of the entire transcript and record of the case of Hall v. Wright, supra, and additional supplementary evidence from various witnesses and exhibits.

■ Respondent objected to introduction of the certified transcript of evidence in Hall v. Wright, supra. The conclusions reached by the jury and our affirmation in the prior civil case are not binding or conclusive on the issues examined here. But the parties may introduce the entire transcript of the prior case in which respondent was a party. We reach this conclusion in disciplinary proceedings independent of section 622.98, Code, 1966, and on authority of such cases as Re Santosuosso, (1945) 318 Mass. 489, 62 N.E.2d 105, 161 A.L.R. 892 and State ex rel. Nebraska State Bar Ass'n. v. Gudmundsen, (1944) 145 Neb. 324, 16 N.W.2d 474.

IV. We shall try to shorten our factual findings because they are set out in detail in Hall v. Wright, supra. In February, 1961, Mrs. Hall wanted to trade her home in Des Moines for a new home being built by one John Haskins. She was both a friend and former client of Robert Wright. She had a very limited income, was receiving Aid to Dependent Children but owned her own home, subject only to taxes and an $800 mortgage lien. She called Mr. Wright, told him of the arrangement under which the parties were to exchange properties and Mrs. Hall was to get $1500 additional cash.

Wright prepared the contract which was dependent on a favorable zoning decision on the Hall property. By early June the zoning was complete. On June 13, 1961, Haskins went to the Hall home with a blank deed to be signed by Mrs. Hall. Mrs. Hall called respondent for advice as to whether she should sign the blank deed.

At this point Mrs. Hall's version of what happened and Wright's version were in conflict. Respondent says he told his client

not to sign but she insisted.[1] Mrs. Hall says her lawyer told her to sign the deed.[2] Respondent had checked the record and determined the property was in Haskins' name but received no abstract then or later. Nevertheless, on the same day Mr. Wright notarized Mrs. Hall's signature and allowed Haskins to take the deed without any effective protection for his client.

The thrust of Hall v. Wright, supra, was stated by us: "Plaintiff's claim was that Wright represented to her Haskins had clear title and she would receive a deed, abstract of title and a title opinion showing Haskins had merchantable title to the 15th Street Place property; the representations were false, Wright knew them to be false and made the representations with intent to deceive and defraud plaintiff; that in reliance on such false representations she made, executed and delivered the warranty deed to her Keo Way property; as a result she lost her home and did not receive the 15th Street Place property." (loc. cit. 261 Iowa at page 765, 156 N.W.2d at page 665.)

Respondent's position then and now is that at most he made an honest mistake and the evidence did not justify a finding of fraud. We disagreed and in doing so said:

"We believe a person is as guilty of actual fraud when in conscious disregard of the truth or falsity of facts his representations are predicated upon he makes such representations to induce action and the party to whom they are made suffers damage by taking the action sought to be induced in reliance upon those representations as surely as if he had intended that very re-sult." (loc. cit. 261 Iowa at page 772, 156 N.W.2d at page 669.)

After the execution and delivery of the deed to Mrs. Hall's property she was given possession of the Haskins' house but it became apparent that Haskins did not have merchantable title to the property he was to convey. In fact he and his wife had already deeded their property to Grandquist Construction Company. Mr. Wright then began a series of land contracts which were designed to get the property for Mrs. Hall. Mrs. Hall claimed she was not informed of these land contracts or their legal significance. We are satisfied Mr. Wright did not keep his client informed of the actual state of her affairs. Rather, with his superior knowledge and control of the situation, he continued to deal with Haskins and Grandquist Construction Company in an effort to rescue a hopeless situation. He kept assuring his client that she would get good title long after it was apparent such title would not be forthcoming without paying for the house a second time.

The details of the subsequent moves by respondent are also set out in the prior case. They include getting the client to sign as a land contract obligating her to pay $100 a month and to sign an $850 note, neither of which she could pay. Mr. Wright says he intended to pay these obligations himself if he couldn't get Haskins to pay them. No one paid. In February 1965, four and one-half years after taking possession, the client was finally put out of what should have been her home.

■ State ex rel. Nebraska State Bar Ass'n v. Pinkett, 157 Neb. 509, 60 N.

---

1. "I told her I thought it would not be wise to sign it until such time as Haskins had conveyed to her his property, but they had made arrangements for her to move almost immediately, and so I told her to have him bring it to my office. Haskins brought the deed to my office with the signature of Gertrude Hall on it."

2. "I got up and called my attorney and Bob said to me on the phone, 'Go ahead and sign the papers, Gertrude.' He said, 'I wish you would stop questioning what I tell you to do because I won't tell you anything wrong.' I believed him because I have known him since he was a child."

W.2d 641, 643, states: "* * * Honest mistake does not ordinarily afford a basis for discliplinary action. If it did, the practice of law would indeed be a hazardous profession." This subject is examined in depth in an annotation found at 96 A.L.R. 2d 823. It is clear from examination of the cases there reported that while an ordinary honest mistake will not usually warrant disciplinary action, nevertheless under particular factual situations attorneys will be disciplined for failure to exercise the degree of professional competence which the affairs of their clients demand. 96 A.L.R.2d 843. This case evidences more than a mere honest mistake. The record shows procrastination,. deceit, deception and neglect of duty. Under the circumstances shown here disciplinary action is necessary.

V. In reaching this conclusion we do not overlook or minimize the eminent character and reputation witnesses produced by respondent. The statement in In Re Krasner, 32 Ill.2d 121, 204 N.E.2d 10, 15, is apropos here:

"In imposing discipline we are not unmindful of its effect on respondent's professional future, nor do we overlook the testimony of his character witnesses or the circumstance that he co-operated with the commissioners in this proceeding. While such factors do bear weight where, as here, the charges against an attorney do not import criminality or moral turpitude, at the same time they do not relieve this court of its obligation to take proper disciplinary action if the charges of improper and unprofessional conduct are found to be true. * * *."

We have considered the evidence of respondent's good moral character, reputation and professional standing in determining penalty to be assessed. We agree with the recommendations of the Commission; respondent should be suspended from practice of the law for a period of two years with the right to seek reinstatement at the end of one year upon showing of acceptable restitution to Mrs. Hall, his former client. Precedent for the latter provision is found in Iowa State Bar Association v. Kraschel, supra.

■ Further, we agree with the complainant that there is an obligation on the part of an attorney to make a good faith effort to meet the moral and legal obligations created by his improper actions as an attorney. Despite his protestations to the contrary, respondent has not made a good faith effort to make his client whole. The disparity between this lawyer's resources and that of his client, the urgency of her situation, the demonstrated ability to raise at least $6500 to pay on the judgment (a payment withheld by respondent because his conditions were not met), all require an effort by respondent far in excess of what has already been made. As we view the record, the only payment made by respondent was forced from him by a writ of attachment. The requirement that respondent reimburse his client if he desires early reinstatement is not unreasonable.

■ VI. Respondent complains because he was not allowed to question Commission members for bias and prejudices. The complaint is without merit. The rules of the Grievance Commission, adopted under the provisions of Supreme Court Rule #118, provide for challenging any member of the Commission by motion filed at least five days prior to the hearing. This was not done.

■ Respondent suggests the Commission should be subject to voir dire examination similar to the examination afforded at jury trial. We cannot agree. No such examination is allowed when a judge determines a case but a judge's impartiality may be challenged in the same manner provided here. The provision for challenge by motion is sufficient.

VII. Nor do we believe respondent's rights were contravened by presence of the Chairman of the Committee on Professional Ethics and Conduct of the Iowa Bar Association. The Committee is complainant here and, as such, a party. The Chairman is its representative.

VIII. In Iowa State Bar Association v. Kraschel, supra, we noted the following rule: " ' "In arriving at the punishment which should be imposed, each case must be largely governed by its particular facts, and the matter rests in the sound discretion of the court. *The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession.* * * *." ' " (loc. cit. 148 N.W.2d at pages 628–629.)

We therefore adopt the findings and recommendations of the Grievance Commission of this court set forth in the second paragraph of this opinion. The license of Robert A. Wright to practice law is suspended effective August 1, 1970, for a period of two years. Application for reinstatement of license may be made at the end of one year on showing of compliance with the conditions set forth in the second paragraph of this opinion.

License suspended.

All Justices concur.