The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Appellee,

v.

N. B. (Mike) WILSON, Appellant.

No. 61687.

Supreme Court of Iowa.

Oct. 18, 1978.

Theodore T. Duffield, of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellant.

Roger J. Kuhle and Lee H. Gaudineer, Jr., Des Moines, for appellee.

McGIVERIN, Justice.

The question here involves what disciplinary action is appropriate upon our de novo review of the report of our grievance commission in this attorney disciplinary proceeding. Respondent appealed from that report. We find the license to practice law of respondent N. B. (Mike) Wilson should be suspended for six months.

The complaint, as amended, by the Committee on Professional Ethics and Conduct

of the Iowa State Bar Association was in four counts. Count I contained allegations respondent violated various statutes and disciplinary rules primarily by committing an assault and battery on another attorney in the Polk County Courthouse. Count II alleged a violation claiming respondent gave false and misleading statements of fact to a panel of district court judges concerning his version of the altercation incident. Count III involved an unrelated allegation of violations claiming neglect by respondent in failing to appear at a court hearing in behalf of a client, Edward Perry, resulting in the client being found in default. Count IV claimed violations in respondent's alleged refusal to be discharged by a client, Mary Huffman, and in increasing his fee bill to her.

After hearing, the Commission found the record sustained Counts I and II. The Commission was unable to determine as a fact from the evidence that Counts III and IV had been sustained but, nevertheless, concluded that respondent's conduct toward his clients, Perry and Huffman, was negligent and unprofessional and should be the subject of reprimand. The Commission recommended that the license of respondent to practice law in Iowa be suspended for a period of six months. Respondent took exception to the Commission's report and appealed its findings, conclusions and recommendation. The report stands now for final disposition here. Court Rules 118.9–118.11.

I. We find the record establishes the following facts.

For approximately one year attorney Robert Laden was employed in respondent's law office in Des Moines. The employment terminated in November 1972 and respondent bore considerable animosity toward Laden thereafter. Laden took 52 of respondent's office files with him upon leaving. Arbitration of respondent's claim for compensation for the files was attempted by the State Bar Association, after complaint was filed by respondent. However, respondent and Laden never settled the account although a tentative figure had been discussed. Laden never paid any settlement amount to respondent.

On January 5, 1977, respondent encountered Laden on the third floor of the Polk County Courthouse outside several courtrooms. Many persons, including jurors, were in the area. Respondent again asked Laden for the settlement money. After Laden rebuffed him, respondent became enraged, loudly cursed Laden and followed him closely down the hall as Laden walked away. After Laden spoke an obscenity, respondent shoved Laden into a vestibule where respondent struck Laken in the head with his fist two times and grabbed for Laden's necktie. Laden then hit respondent before a court bailiff interceded and separated the antagonists. No other persons saw the blows being struck, but at least two persons, an attorney and a court reporter, heard the obscenities and loud language used by respondent. Laden weighed about 140 pounds and respondent 230.

The altercation was reported to the Honorable Gibson C. Holliday, Chief Judge of the Fifth Judicial District. By letter dated January 6, respondent and Laden were requested to meet on January 14 before Chief Judge Holliday and District Judges A. B. Crouch and Ray Hanrahan in regard to the incident of January 5. Laden and respondent both appeared before the panel of judges and upon request related their version of the January 5 incident. Respondent told the court relative to the altercation with Laden:

> I started walking away towards Judge Perkins' courtroom. I was followed by him with some of the most foul, obscene language I have heard. He kept threatening he would take me outside. I walked down to Perkins' court, I turned left towards the jury room. He was behind me: Screaming, hollering, raising hell.
>
> I suppose in some way I did respond, but the language—he was the one that did all the foul language, he was the one that insisted on some trouble.
>
> I turned and walked away from him. He threw the first punch, the very first punch hit me right on the side of the head. I did slap him twice—open hand. He was screaming and hollering. I never lifted my hand.

However, in the hearing before the Commission, respondent admitted he, also, used foul language in the confrontation with Laden and that his statement to the panel of judges possibly, but not deliberately, contained inaccuracies as to the January 5 incident. The Commission concluded, and we agree, that respondent's statement to the panel of judges contained misrepresentations of material facts in claiming that Laden provoked the entire January 5 incident, did all the cursing, and struck the first blow. We find respondent provoked the incident that day, struck the first physical blow and committed an assault and battery on Laden outside the courtrooms. Respondent may have been irritated by Laden's past conduct, which appears not to be without fault, but it does not excuse respondent's conduct on January 5 and his misrepresentations to the court on January 14. The panel of judges, obviously, was preliminarily investigating a highly unusual incident involving two licensed lawyers that occurred in a corridor just outside their courtrooms during normal business hours. The judges were entitled to be told the truth about the incident by lawyers that have the privilege to practice before the court.

The Commission in substance found the evidence insufficient to sustain the allegations of Counts III and IV. The record suggests respondent accepted representation for a larger volume of clients than he was capable of handling. He did not terminate his employment by the two clients, Perry and Huffman, in a mutually satisfactory manner. However, we agree with the Commission that the evidence does not substantiate Counts III and IV of the complaint. Therefore, a further recitation of the record as to these counts would serve no useful purpose.

■ II. The charges against respondent must be proved by a convincing preponderance of the evidence. *Committee on Professional Ethics, Etc. v. Crary*, 245 N.W.2d 298, 299 (Iowa 1976). This requirement is something less than required in a criminal prosecution, and is something more than is required in a civil proceeding. The ulti-

mate issue before the Commission, and this Court, is the fitness of respondent to practice his chosen profession. In determining that issue, the allegations of the complaint which are established by the required proof are viewed together and not separately. *Iowa State Bar Assn. Comm. v. Kraschel*, 260 Iowa 187, 194, 148 N.W.2d 621, 625–626 (1967).

III. *The charge under Count I.*

Assault and battery is a simple misdemeanor under section 694.1, The Code, 1977. A criminal conviction, however, is not a condition precedent to a disciplinary proceeding when the facts themselves warrant discipline. *Iowa State Bar Assn. Comm. v. Kraschel*, 260 Iowa at 198, 148 N.W.2d at 628; *State v. Metcalfe*, 204 Iowa 123, 127, 214 N.W. 874, 875 (1927). Cf. *Comm. on Professional Ethics and Conduct v. Hanson*, 244 N.W.2d 822, 824 (Iowa 1976). Respondent's conduct causes us to take appropriate action because it involves one attorney assaulting another attorney, or judicial officer, in a courthouse over a disagreement arising from a professional relationship.

This conduct violates Ethical Consideration 1–5, Canon 1, Iowa Code of Professional Responsibility for Lawyers which states:
"EC 1–5 A lawyer should maintain high standards of professional conduct and should encourage fellow lawyers to do likewise. He should be temperate and dignified, and he should refrain from all illegal and morally reprehensible conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude."

Also violated by respondent's conduct, are EC 9–2 Canon 9, and section 610.14(1) and 610.24(3), The Code, 1977.

These sections provide as relevant:
"EC 9–2. Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer . . .
"Section 610.14. Duties of Attorneys and Counselors. It is the duty of an attorney and counselor:

1. To maintain the respect due to the courts of justice and judicial officers . .

"Section 610.24. Grounds of revocation. The following are sufficient causes for revocation or suspension:

. . . 3. A willful violation of any of the duties of an attorney or counselor as hereinbefore prescribed."

The charges under Count I are sustained by a convincing preponderance of the evidence.

IV. *The charge under Count II.*

Respondent states in his brief that he has no quarrel with the right of the district judges to inquire into the particulars of the January 5 occurrence, and further states his version to the judges of the incident was "admittedly biased and prejudiced and in all probability somewhat inaccurate." We agree.

In his statement to the judges, respondent violated Disciplinary Rule 1–102(A)(4), Canon 1, which states:

"DR 1–102. Misconduct.

(A) A lawyer shall not:

. . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

The version of the January 5 occurrence that respondent related to the judges contained many misrepresentations or misstatements of material facts and sustains the charge under Count II.

V. We must decide the penalty for respondent's violations. We agree with the recommendation of the Commission as to suspension.

It is ordered respondent be suspended indefinitely from the practice of law and shall not be reinstated for six months from the date of this decision. He is given leave to apply for reinstatement pursuant to court rule 118.13, providing he then furnish the court satisfactory proof that he is at that time of good moral character and in all ways worthy of the right to practice law. See Supreme Court Rule 118.

Respondent's suspension shall apply to and include all facets of the ordinary law practice, including, but not limited to, examination of abstracts, consummation of real estate transactions, and preparation of deeds, buy and sell agreements, contracts, wills and tax returns. He shall immediately transfer to other counsel all legal matters, if any, in which he has been engaged or employed as counsel. Upon any application for reinstatement respondent also shall prove he has not practiced law or performed any of the aforesaid services during the suspension period.

LICENSE SUSPENDED.

All Justices concur.